1

2

3

4

5

6                   IN THE UNITED STATES DISTRICT COURT

7               FOR THE EASTERN DISTRICT OF CALIFORNIA

8

| | |
|---|---|
| LARRY L. EDWARDS, ALAN M. HILDRETH, | 1:13 – cv – 0105 AWI MJS |
| Plaintiffs, | MEMORANDUM OPINION AND ORDER ON DEFENDANTS' MOTION TO DISMISS |
| vs. | |
| DEPARTMENT OF STATE HOSPITAL (DSH) – COALINGA (FORMERLY DEPARTMENT OF MENTAL HEALTH (DMH) – COALINGA, PAMELA AHLIN, DAVID MONTOYA, ANDREW BERARD, ROBERT OLIVEIRA, | Doc. #'s 60, 61 and 62 |
| Defendants. | |

9

10

11

12

13

14

15

16

17

18

19          This is an action for damages and injunctive relief by Plaintiffs Larry Edwards

20   ("Edwards") and Alan Hildreth ("Hildreth") (collectively, "Plaintiffs") against Department of

21   State Hospital – Coalinga ("Hospital,") Pamela Ahlin, David Montoya, Andrew Berard and

22   Robert Olivera ("Defendants").  Plaintiff's Second Amended Complaint ("SAC") alleges a

23   single claim for violation of Title VII of the Civil Rights Act of 1964.  Currently before the court

24   is a trio of motions by Defendants including a motion to dismiss, a motion to quash for improper

25   service of process and a motion to sever Plaintiffs.  For the reasons that follow, Defendants'

26   motion to dismiss will be granted and the motions to quash and to sever will be denied as moot.

27   Federal subject matter jurisdiction exists pursuant to 28 U.S.C. § 1331.  Venue is proper in this

28   court.

## PROCEDURAL HISTORY

The original complaint in this action was filed on January 23, 2013.  The original complaint was dismissed by order of the court on May 17, 2013, and a first amended complaint was filed on June 4, 2013.  The court granted Defendants' motion to dismiss Plaintiffs' first amended complaint by an order dated December 10, 2013, Docket Number 55 (the "December 10 Order").  The currently operative pleading is Plaintiffs' Second Amended Complaint ("SAC"), which was filed on January 3, 2014.  Plaintiffs' SAC alleges a single claim for relief for violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.  On January 24, 2014, Defendants filed the instant motion to dismiss pursuant to Rule 12(b) of the Federal Rules of Civil Procedure.  Plaintiffs' opposition was filed on February 10, 2014.  The court took the matter under submission without oral argument as of February 24, 2014.

## FACTUAL BACKGROUND

Plaintiffs' past attempts to state a claim for relief have been unsuccessful primarily because Plaintiffs have failed to allege facts within the body of the complaint that would constitute a basis for relief.  See Doc. # 55 at 5:26-6:5 (noting that Plaintiff's complaints have been typified by conclusory allegations of misconduct that fail to state a claim).  Plaintiffs' SAC represents another incremental step toward in the right direction but, again, falls far short of providing a short and concise statement facts and law stating a claim for relief.  In the SAC, Plaintiffs have alleged separate sets of facts to in support of what are, in fact, separate claims united only by the allegation that the acts complained of were carried out against a backdrop of racial discrimination.  The court will attempt to summarize the facts alleged for each of the Plaintiffs.

### A.  Edwards

The factual allegations relating to Plaintiff Edwards are set forth at pages 3 to 27 in the SAC.  The "facts" alleged consist of a number of long narratives chronicling Edwards' interactions with various individuals, including principally lieutenants who had some unspecified supervisory authority over Edwards and other sergeants with whom Edwards interacted on a peer

basis.  Although it is difficult to follow the point of Edwards' narratives in some cases, there appear to be a few themes that stand out.  First, Edwards alleges he was subjected to differential treatment with regard to scheduling by a Lieutenant Yarbrough for the purpose of benefitting Yarbrough's son, who is or was a sergeant.  The allegation appears to be that, in rearranging personnel to fit into various duty slots in order to provide a preferred duty for his son, Yarbrough often or predominantly picked on Edwards to make the change needed.  A number of pages of narrative are also used to describe Yarbrough's alienating demeanor and his penchant for favoritism or bias for or against other sergeants and his practice of undermining Edwards' work. Edwards also alleges that sick time usage, which he alleges he has seen "perform[ed] against other officers which led to Adverse Action (formal disciplinary Action)" was somehow threatened against him although there appears to be no instance of anything that would qualify as an adverse employee action.  Doc. # 56 at 11:18-19.   There are a number of pages of narrative concerning absence, sick leave, light duty posting or clearance for return to work that appear to be intended to show instances where different standards were applied to Edwards than to other sergeants.

From page 15 of the SAC through page 22, Edwards narrates a number of events or encounters involving Lieutenant Andrew Berard.  In sum, the narrative is intended to support Edwards' contention that he was subject to "threats, intimidation, ridicule or mockery, racial comments, unwarranted negative evaluations & unwarranted write ups."  Doc. # 56 at 15:22-24. About one-half of the narrative appears aimed at illustrating Lieutenant Berard's abrasive, abusive or unprofessional management style as Edwards experienced it.  Another portion of the narrative deals with a dispute between Berard and Edwards concerning Edwards request for leave for the purpose of attending a school function with his daughter.  A third portion of the narrative recounts what Edwards contends is misuse of evaluations and incident reports casting Edwards falsely in a bad light.

Edwards' narrative ends with some accounts of statements made by Sergeants Peugh, Dorherman, Jones, Barnett and Wilson.  What Edwards it trying to illustrate with these

narrations is not entirely clear.  Of some possible significance is a portion of the narrative concerning Sergeant Peugh wherein Edwards is relating to Peugh that Edwards did not receive an email that was sent by a Sergeant Bell to everyone except Edwards.  Upon telling Peugh that he was excluded from the email list, Peugh allegedly replies "'Maybe he just don't like you'" to which Edwards replies that there "seems to be a lot of you who have a problem with me, Peugh stated at least you know."  Doc. # 56 at 23:8-9.  Edwards uses this exchange to "confirm[] that, as an African American Sergeant I am treated differently."  Id. at 9-10.

**B. Hildreth**

The facts alleged by Plaintiff Alan Hildreth comprise a shorter narrative commencing at page 27 of the SAC and continuing to page 31.  So far as can be discerned, the facts alleged by Hildreth all relate a negative evaluation prepared by Acting Sergeant Duvall in June 2010.  Apparently, Hildreth felt the negative evaluation alleged misuse of sick time "without supporting disciplinary documentation for justifying [Duvall's] actions."  Doc. # 56 at 27:19-20.  Hildreth responded with a rebuttal, which Duvall and Lieutenant Oliveria would not sign.  Hildreth requested a change of supervisor, which was denied.  Hildreth alleges officers Oliveria and Duvall retaliated against Hildreth for filling a rebuttal by "trying to set [Hildreth] up covering up for Officer Wingfield (Caucasian Female) for not turning in contraband and unlawfully seizing patients' property."  Doc. # 56 at 28:7-8.

Hildreth filed an EEOC complaint alleging retaliation in November of 2011.  Most of the remainder of Hildreth's narrative chronicles events that transpired after the filing of the EEOC complaint.  So far as can be discerned from the SAC, thrust of Hildreth's narrative is that, after he filed his complaint, he felt he was subjected to increased scrutiny with regard to his work performance and he was placed on "the Specialized Services Unit," which was "a pilot program by the State for civil detainees at [Hospital] with higher risk for chronic aggression towards staff and patients."  Doc. # 56 at 30:15-17.  There is no indication that any negative employment action, other than the filing of the allegedly negative evaluation in 2010, ever occurred.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**LEGAL STANDARD**

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure can be based on the failure to allege a cognizable legal theory or the failure to allege sufficient facts under a cognizable legal theory.  Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir.1984).  To withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint must set forth factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) ("Twombly").  While a court considering a motion to dismiss must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), and must construe the pleading in the light most favorable to the party opposing the motion, and resolve factual disputes in the pleader's favor, Jenkins v. McKeithen, 395 U.S. 411, 421, reh'g denied, 396 U.S. 869 (1969), the allegations must be factual in nature.  See Twombly, 550 U.S. at 555 ("a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").  The pleading standard set by Rule 8 of the Federal Rules of Civil Procedure "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) ("Iqbal").

The Ninth Circuit follows the methodological approach set forth in Iqbal for the assessment of a plaintiff's complaint:

> "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."

Moss v. U.S. Secret Service, 572 F.3d 962, 970 (9th Cir. 2009) (quoting Iqbal, 129 S.Ct. at 1950).

1

2

**DISCUSSION**

3

        The December 10 Order interpreted Plaintiffs' First Amended Complaint as asserting a

4

single claim for violation of Title VII by both Plaintiffs against both Hospital and a number of

5

individual Defendants.  The court noted that Title VII does not afford a cause of action against

6

individual actors and so dismissed the claims against the individual Defendants with prejudice.

7

The claim against Hospital was dismissed without prejudice for failure to allege sufficient facts

8

in the body of the complaint to state a claim.  With regard to Plaintiffs' SAC, the court finds that

9

it continues to assert a single claim, common to both Plaintiffs, of violation of Title VII.  As was

10

the case with Plaintiffs' First Amended Complaint, the court has reviewed Plaintiffs' SAC and

11

finds that it asserts a single claim by both Plaintiffs' for violation of Title VII on theories of

12

discrimination and/or retaliation.

13

**I. Discrimination**

14

        As the court previously noted in its December 10 Order, "A plaintiff seeking to state a

15

claim under Title VII is ultimately burdened to prove by a preponderance of the evidence that

16

the defendant intentionally discriminated against the plaintiff on impermissible grounds – race or

17

ethnicity.  <u>Texas Dep't of Community Affairs v. Burdine</u>, 450 U.S. 248, 253 (1981).  Where, as

18

often is the case, direct proof of discriminatory intent is not possible, the plaintiff must show that

19

she suffered adverse employment action 'under circumstances which give rise to an inference of

20

unlawful discrimination.' <u>Id</u>."   Doc. # 55 at 6:18-23.  A plaintiff may prove intent through

21

either "direct or circumstantial evidence demonstrating that a discriminatory reason more likely

22

than not motivated the employer." <u>Metoyer v. Chassman</u>, 504 F.3d 919, 930 (9th Cir.2007).  An

23

example of direct evidence of such intent is an employer's use of a racial slur or epithet. <u>Lindsey</u>

24

<u>v. SLT Los Angeles</u>, LLC, 447 F.3d 1138, 1141 (9th Cir.2006); <u>Cornwell v. Electra Cent. Credit</u>

25

<u>Union</u>, 439 F.3d 1018, 1029 n. 7 (9th Cir.2006).  Where, as here, direct evidence of

26

discriminatory intent is lacking, the court may infer discrimination if Plaintiffs allege facts to

27

show that they were treated differently based on their race (disparate treatment) or they were

28

subjected to racial harassment." Doc. # 55 at [???].

**A. *Disparate Treatment***

The elements of a prima facie claim for disparate treatment under Title VII are (1) membership of the plaintiff in a protected class; (2) satisfaction by the plaintiff of the qualifications for the position in issue; (3) an adverse employee action; and (4) more favorable treatment of similarly situated individuals outside the plaintiff's protected class. <u>See</u> <u>Davis v. Team Elec. Co.</u>, 520 F.3d 1080, 1089 (9th Cir. 2008). An "adverse employee action" for purposes of Title VII is any action that negatively impacts an employee's "'compensation, terms, conditions or privileges of employment.'" 42 U.S.C. § 2000e-2(a)(1); <u>Chuang v. University of California, Davis, Board of Trustees</u>, 225 F.3d 1115, 1125 (9th Cir. 2000). The court's dismissal of Plaintiffs' claims in its December 10 Order focused primarily on Plaintiffs' failure to  identify specific conduct by Defendants that could be understood as constituting adverse employee action and failure to allege facts to show that individuals outside Plaintiffs' protected class were treated more favorably. Although the court recognizes the attempt Plaintiffs have made to correct the deficiencies noted in the First Amended Complaint, the flaws noted previously remain.

**1. *Edwards***

Edwards' narrative recounts a number of instances of alleged mistreatment, but the court is only able to find one category of allegedly discriminatory conduct where Edwards alleges that other, non-African American sergeants were treated differently. That category of conduct is the tendency of Lieutenant Yarbrough to use Edwards preferentially as the counterparty in Yarbrough's scheduling changes to benefit his son. Even with regard to scheduling, however, Edwards fails to explain how the scheduling changes have negative impacts on Edwards' compensation, terms, conditions or privileges of employment. Based on Edwards' narrative, there appear to be two types of scheduling changes; changes of shift or workday and change of work venue. Of the two, only the first has any conceivable implications with regard to terms, conditions or privileges of work. There appears to be some subjective sense that assignment to a kiosk or a desk is better than assignment to the "field" or some other assignment, but the court cannot conceive of a way that such switches amount to an adverse employee action within the

supplied definition.  The only type of scheduling change that could conceivably raise an issue of adverse employee action is one that changes the assigned workday or shift in such a way as to violate a right, privilege or practice commonly granted to all employees.  If that sort of action has occurred, Edwards' narrative fails connect the action to the violation in a way that provides notice to the court or to Defendants as to what specific conduct is being alleged to violate Edwards' rights and how often such conduct occurred.

Edwards' narrative complains about the use of a "Sick Time Usage Write Up" that may or may not have been filed against Edwards after Edwards filed his EEOC complaint.  Edwards alleges that Defendants have used such write ups as a basis for later Letters of Reprimand, which may have negative impacts on an employee's conditions of employment.  Edwards' allegation that this has happened to other officers or is a ploy commonly used by Defendants undercuts his claim that there is a discriminatory intent behind Defendants use of the write up.  In any event, there is no indication that a non-African American employee would not have received a write up under similar circumstances and there is no indication the write up was ever use as the basis for anything that could be considered an adverse employee action.

Edwards devotes about eight pages of narrative to relations with Lieutenant Berard.  One part of the narrative serves to illustrate instances where Berard asked or instructed Edwards to make false or otherwise questionable additions, corrections or changes to records or to illustrate Berard's abrasive interpersonal style with regard to Edwards.  This portion of the narrative does not allege any adverse employee action with regard to Edwards and so does not advance Edwards claim of discrimination under Title VII.  The second part of Edwards narrative concerning Berard deals with an instance where Edwards requested time off to attend his daughter's school activity.  Edwards alleges the request was given to Lieutenant Oliveira but was taken up by Berard.  Edwards alleges Berard initially denied Edwards' request and demanded documentation to establish the legitimacy that is not normally required of other officers applying for the same time off.  What Edwards' narrative lacks is any indication that he was denied or prevented from taking time off that he was entitled to or that there was no basis under recognized

employee rights for Berard to demand the increased documentation.  Lacking information to establish that Edwards suffered actual interference with a condition or privilege of his employment, the court cannot find that there was disparate treatment.

The court has reviewed the remainder of Edwards' narrative several times and can only conclude there are no facts set forth that would tend to establish that any of the other examples involved either or both an adverse employee action within the meaning provided or that the complained-of conduct occurred to Edwards and not to any of the other non-African American sergeants.  In sum, the court is unable to identify allegations set forth in the SAC that would support a claim by Edwards of violation of Title VII on a theory of disparate treatment.

### 2. Hildreth

Hildreth's narrative does not appear to set out facts that would amount to disparate treatment.  Hildreth describes a proposed disciplinary action that was instituted after Hildreth filed an EEOC complaint alleging discriminatory conduct.  The proposed disciplinary action was based on an incident involving lost or misplaced patient contraband.  Hildreth was one of twenty five officers involved in the investigation and there is no indication he was the sole, or even major, subject of the disciplinary action.  The proposed disciplinary action ended without any action being taken.   The only other fact alleged by Hildreth that could conceivably fall in the category of employee action, whether adverse or not, was his assignment to the pilot program that may have involved increased contact with patients who may have been more prone to attacks on staff.  However, to the extent assignment to this program could be seen as "adverse," there is no basis to support the proposition that non-African Americans were treated differently in being assigned to the same program.  The court concludes Hildreth has not alleged facts to support a claim of violation of Title VII on the theory of disparate treatment.

### B. Racial Harassment

To allege a claim for hostile environment or harassment due to race, a plaintiff must allege facts to show (1) the plaintiff "'was subjected to verbal or physical conduct' because of her race, (2) 'the conduct was unwelcome,' and (3) 'the conduct was sufficiently severe or

pervasive to alter the conditions of [the plaintiff's] employment and create and abusive work environment.' [Citation.]" Manatt v. Bank of America, 339 F.3d 792, 797 (9th Cir. 2003). at 797 (reciting elements for hostile work environment claim and quoting Kang v. U. Lim Am., Inc., 296 F.3d 810, 817 (9th Cir. 202)); Martinez v. Marin Sanitary Services, 349 F.Supp.2d 1234, 1251 (N.D. Cal. 2004) (reciting same elements for claim of racial harassment). The court's December 10 Order granted dismissal of Plaintiffs' claim for violation of Title VII on a theory of harassment for two reasons; first, the court found the complained-of conduct was not so severe as to constitute an alteration of the conditions of employment and second, facts were not alleged to show the conduct was the result of Plaintiffs' race. The problem persists in Plaintiffs' SAC.

The requirement that the plaintiff must show he was "subjected to verbal or physical conduct because of her race" incorporates an ambiguity. The ambiguity is whether the conduct must be of a racially deprecatory nature or whether any conduct that is unwelcome is actionable so long as the motivation behind the conduct is racial in nature. In Vasquez v. County of Los Angeles, 349 F.3d 634 (9th Cir. 2004), the Ninth Circuit expressed the elements of a harassment claim as follows:

> Under Title VII it is unlawful for an employer to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of his race, color, religion, sex, or national origin. To prevail on a hostile workplace claim premised on either race or sex, a plaintiff must show: (1) that he was subjected to verbal or physical conduct *of a racial or sexual nature*; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment.

Id. at 642 (italics added). Where, as here, the conduct complained of is not racial in nature, a court cannot conclude the conduct was racially motivated simply on the basis of Plaintiff's suspicions or on the opinions of coworkers. See Fields v. Riverside Cement, 226 Fed.Appx. 719, 724 (2007 WL WL 900983 (9th Cir. 2007)); Rosa v. Scottsdale Mem. Health Systems, Inc., 132 F.3d 38, 1997 WL 753359 (9th Cir. (Ariz.) 1997) at *1 (holding harassment claim fails because plaintiff failed to allege incidents contributing to hostile environment were racial in nature).

Both Edwards and Hildreth have alleged unwelcome conduct by supervisors and/or co-workers but none of the complained-of conduct has been expressly racial or racist in nature. While Edwards has alleged some comments by co-workers were racist in nature, the court has previously noted that there is no situation in which comments showing racial animus were directed to Edwards personally. For the most part, the comments that were alleged were only tangentially racial in nature, if at all, and were directed to situations in which Edwards was not involved. Finally, Edwards has not alleged that any racial comments were ever uttered by supervisory officers in connection with instances of assignments to less desirable duty stations, or tasks or duties, or in connection with any evaluations of job performance. The court notes that Hildreth has alleged absolutely no facts that would tend to tie any of the allegedly harassing conduct to racially biased motivation.

As far as can be determined from reading the SAC, both Edwards and Hildreth were subjected to working conditions, criticisms or comments they felt were inappropriate, demeaning or unfair. However, even if proven, the facts alleged do not rise to the level of conduct that is so pervasive and severe as to change working conditions. As most, what the SAC alleges is that Plaintiffs were subject to leadership that is afflicted with pettiness, favoritism and poor judgment. Such conditions, while lamentable, cannot be challenged under Title VII where the only indication that the conduct was the result of racial bias is the fact that those on the receiving end of the conduct are African American and those on the supervisory end are not.

**II. Retaliation**

To state a claim for retaliation under Title VII, a plaintiff "must establish that; (1) she engaged in a protected activity, such as the filing of a complaint alleging racial discrimination, (2) the [defendant] subjected her to an adverse employment action, and (3) a causal link exists between the protected activity and the adverse action." Manatt, 339 F.3d at 800 (internal citations and footnotes omitted). As discussed above, the facts alleged in the SAC fail to identify an "adverse employee action" within the meaning provided. In addition, whether intended or not, Plaintiffs' SAC alleges Plaintiffs filed their EEOC complaints to complain of

racial bias and were subjected to racial bias after they filed their complaints.  In other words, Plaintiffs allege they were subjected to the same sort of discriminatory conduct after they filed their EEOC complaints as they subjected to before they filed the complaints.  From the facts provided, it is not possible to show there was any causal link between the filing of the EEOC complaints and Defendants' conduct after the complaints were filed.  As far as can be determined from the SAC, Plaintiffs allege they were discriminated against before and after filing the EEOC complaints.  The fact there was no clearly identified change in Defendants' behavior after the filing of the EEOC complaints undermines any claim there was a causal connection between Defendants' conduct and the filing of the complaints.

**III.  Leave to Amend**

"If a complaint is dismissed for failure to state a claim, leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency."  <u>Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc</u>., 806 F.2d 1393, 1401 (9th Cir. 1986).

Plaintiff's SAC shows an incremental improvement over the prior two complaints that -- while still written in a difficult-to-follow narrative style -- is sufficient to demonstrate to the court the basic nature of Defendants' conduct that is the basis for Plaintiffs' claims.  The court has found that, even construing the facts in a light favorable to Plaintiffs, there is no alleged factual basis to show that an "adverse employee action" was committed by Defendants as to either Plaintiff.  There is also no factual basis alleged by Plaintiffs to show that there is a connection between racial animus against Plaintiffs and the conduct that they allege was unlawful.  At this point, after three attempts, the court must conclude that if facts were available to correct the deficiencies that have been pointed out previously, those facts would have been asserted by this point.  Since that is not the case, the court concludes that further amendment will not cure the defects in Plaintiffs claim and that leave to further amend is not appropriate.

THEREFORE, for the reasons discussed above, it is hereby ORDERED that:

1.      Defendants' motion to dismiss Plaintiffs' SAC is hereby GRANTED as to all Defendants.  Plaintiffs' SAC is hereby DISMISSED in its entirety as to ALL DEFENDANTS with prejudice.

2.      Defendants' motions to quash service of process, Doc. # 60, and to sever, Doc. # 61, are each DENIED as moot.

IT IS SO ORDERED.

Dated:   April 21, 2014                    _____
                                           SENIOR  DISTRICT  JUDGE